UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY A. JONES,

        Plaintiff,

Case No. 1:12-cv-1341

Hon. Robert J. Jonker

v.

DANIEL HEYNS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment brought by defendants Daniel Heyns, P. Makara and R. Randle (docket no. 14).

**I.    Plaintiff's complaint**

The Court previously summarized plaintiff's claims as follows:

Plaintiff Anthony A. Jones presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). He sues MDOC Director Daniel Heyns and the following IBC employees: Captain P. Makara, Lieutenant R. Randle, and Corrections Officer (unknown) Shreve.

On August 12, 2012, when Plaintiff was leaving the prison cafeteria with prisoner Walker, Defendant Shreve commented, "Jones, I always see you and Walker, walking together. I wonder know [sic] which one of you are the boy, and who's the girl." (Compl. ¶ 11, docket #1, Page ID#3.) Defendant Shreve was standing with another officer, and both officers began laughing. Plaintiff asked Shreve not to refer to him as a boy, which, in the prison context, implies that he is homosexual. Shreve responded, "I'm just saying. It look like it to me." (*Id.* ¶ 14.)

Plaintiff contends that the comment violated MICH. DEP'T OF CORR., Policy Directive (PD) 03.02.140 (involving prohibited sexual conduct involving prisoners) and PD 03.03.130 (requiring humane treatment and living conditions for prisoners). Plaintiff filed a grievance complaining of the alleged policy violations.

> On August 30, 2012, Defendant Makara reviewed the grievance with Plaintiff and told him that Defendant Shreve had denied the comment and the other officer stated that he had not heard Shreve make the statement.
>
> On September 5, 2012, Defendant Makara issued a Class II misconduct charge against Plaintiff for filing an unfounded grievance, ostensibly at the direction of the MDOC Director's Office and in accordance with PD 03.03.130 ¶¶ K, L (permitting issuance of a misconduct ticket, if approved by Warden in consultation with the Deputy Director or his designee). Defendant Randle conducted the misconduct hearing on September 11, 2012. Randle stated that his hands were tied because the Captain and Lansing had ordered issuance of the misconduct. Defendant Randle then found Plaintiff guilty of filing a misconduct ticket [sic] because Plaintiff's allegations were unfounded.
>
> Plaintiff alleges that misconduct tickets are frequently issued against prisoners who file grievances. Plaintiff alleges that Defendants Makara and Randle retaliated against him by filing and upholding a misconduct ticket, in violation of the First Amendment and prison policy. He also alleges that Defendant Shreve's harassing statement violated the Eighth Amendment. In addition, he contends that PD 03.02.130 is void for vagueness, insofar as it fails to define the phrase "misusing the grievance process." (*Id.* ¶¶ 39-40.)

Opinion at pp. 2-3 (docket no. 7).

Plaintiff divided his complaint into five counts, commencing with Count II.[1] In Count II, plaintiff alleged that all three defendants retaliated against him (i.e., engaged in a "reprisal act against Plaintiff") in violation of his First and Eighth Amendment rights. *See* Compl. at ¶¶ 26-33. In Count III, plaintiff alleged that defendant Shreve violated his "Eighth Amendment right to be free from sexual harassment." *Id.* at ¶¶ 34-37. In Count IV, plaintiff alleged that MDOC Policy Directive 03.02.103 ¶¶ K and L are unconstitutional and seeks injunctive relief. *Id.* at ¶¶ 38-43. In Count V, plaintiff alleged that defendants retaliated against him in violation of his First and Fourteenth Amendment rights. *Id.* at ¶¶ 44-49. In Count VI, plaintiff alleged that defendants violated his substantive due process rights when they retaliated against him "for filing a good faith

---

[1] The Court notes that plaintiff's complaint did not include a Count I.

grievance." *Id.* at ¶¶ 50-53. Although it is not entirely clear from his complaint, it appears that plaintiff is suing all defendants in both the individual and official capacities. Compl. at ¶¶ 5-9.

In screening plaintiff's complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, the Court dismissed all of plaintiff's claims against defendant Shreve. *Id.* at p. 7; Order for partial dismissal (docket no. 8). The remaining defendants, Heyns, Makara and Randle, have moved for summary judgment with respect to the retaliation claims against them as alleged in Counts II, V and VI. Defendants' motion, however, does not address plaintiff's claim in Count IV that Policy Directive 03.02.130 ¶¶ K and L are unconstitutional.

## II. Defendants' motion for summary judgment

### A. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations [2] omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**B.      Official capacity claims**

Plaintiff's § 1983 claims for monetary damages against the defendants Heyns, Makara and Randle in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, defendants are entitled to summary judgment on these claims.

---

[2] The Court notes that while defendants also discuss qualified immunity, they do not raise this defense, stating that under the facts of this case "[d]efendants have no need for a qualified immunity defense" and that "qualified immunity does not come into play." Defendants' Brief at pp. 12-13.

C.   **Plaintiff's failure to exhaust the retaliation claims**

1.   **Exhaustion requirement**

The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

2.   **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a

problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Grievance no. IBC-12-07-2144-17b ("2144")

Defendants contend that plaintiff did not properly exhaust grievance no. 2144 prior to filing the present lawsuit. Defendants, however, have not presented a copy of this grievance or explained how the grievance relates to plaintiff's claims in the present case. In his response to defendants' motion for summary judgment, plaintiff stated that the operative grievance for his lawsuit is IBC-12-09-2871-27a ("2871"). *See* Plaintiff's Response (docket no. 21 at pp. 9-11); Grievance 2871 (docket no. 21-2 at pp. 6-11). Plaintiff's First Amendment claim is that defendants issued a Class II misconduct report for Interference with Administration of Rules in retaliation for plaintiff filing a grievance. Grievance 2871 was directed at defendant Makara for issuing the Class

6

II misconduct, which resulted in plaintiff losing seven days of privileges. *Id.* Grievance No. 2871 also mentioned defendant Randle as one of the "other parties involved" in the alleged misconduct. *Id.* Grievance 2871 was rejected at Step I because it raised a non-grievable issue, i.e., plaintiff's claim was directly related to the misconduct hearing process. *Id.* The Step I rejection further stated that plaintiff's avenue of recourse was through the hearing appeal process. *Id.*

Plaintiff appealed to Step II, which denied the grievance with the following explanation:

> RUM Vroman reviewed this situation. Prisoner Jones received an Interference with the Administration of Rules (423) misconduct on 8-20-12 and was found guilty since Jones' allegations, contained in a grievance filed against CO S. Shreve, were investigated and determined to be unfounded. The grievance was without merit. This grievance #2871 appears to be a continuation of the unfounded allegations and the unsupported complaints based on the initial grievance against CO Shreve, and now submitted against the misconduct he was found guilty of. Based on Jones' apparent sequential misuse of the grievance process, by copy of this appeal response Grieve. Coord. M. Robinson is being requested by RUM Vroman to submit prisoner Jones' history of seemingly misusing the grievance system for possible placement of Jones on Modified Access status.
>
> Prisoner Jones' appeal provides neither evidence nor information that substantiates his allegations.
>
> This grievance is hereby denied.

*Id.* MDOC records reflect that plaintiff filed the Step III appeal for grievance no. 2871 on November 14, 2012, and that the appeal was rejected. *See* MDOC Prisoner Step III Grievance Report (docket no. 15-2 at p. 2).

### 4. Plaintiff's appeal of the misconduct determination

Defendants contend that plaintiff's retaliation claims are unexhausted because plaintiff did not raise retaliation as a defense at either the misconduct hearing or the appeal of that hearing. The record reflects that plaintiff's sole defense raised was that the Class II misconduct was

7

a "false ticket." Class II and III Misconduct Hearing Report (docket no. 1-1 at p. 4). The Hearing Officer, Lt. Randle, rejected this defense, found plaintiff guilty, and sanctioned plaintiff with seven days loss of privileges. *Id.*[3]

Under MDOC Policy Directive 03.03.105 ¶ TTT (eff. 11/1/2010), a prisoner found guilty of a Class II misconduct, like plaintiff, may file an appeal of the facility hearing officer's decision to the Deputy Warden within 15 days after receipt of the hearing officer's written decision. An adverse decision in a Class II misconduct hearing, being a minor misconduct, is a non-grievable issue. *See id.* at ¶ B ("Class II and Class III misconducts are subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts"); Policy Directive 03.02.130 ¶ F.4. ("Grievances that raise the following non-grievable issues shall also be rejected: . . . 4. Decisions made in minor misconduct hearings, including property disposition."). Grievances which challenge misconduct reports are rejected and considered to be irrelevant in determining exhaustion. *See generally, Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) (Michigan's rules provide that the only avenue for challenging a major misconduct report is a hearing, that decisions made in hearings conducted by hearing officers of the Hearings and Appeals Division are non-grievable, that grievances challenging such reports are rejected as non-grievable and are irrelevant in determining exhaustion).

---

[3] The Court notes that plaintiff cannot base his retaliation claim on a constitutionally protected right to be free from "false misconduct" charges that may lead to disciplinary action. "The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986). *See Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. 2004) (adopting rule expressed in *Freeman*); *Jackson v. Hamlin*, 61 Fed. Appx. 131 (6th Cir. 2003)(same); *Munson v. Burson*, No. 98-2075, 2000 WL 377038 at *3-4 (6th Cir. April 7, 2000) (same).

Here, plaintiff appealed the defendant Randle's decision, claiming that it was flawed by eight separate due process violations: (1) the misconduct was written while the grievance which was the basis for the misconduct (ICB-12-08-2507-17c) was ongoing[4]; (2) the hearing was conducted in violation of Policy Directive 03.03.105 ¶ PP; (3) the hearing was not conducted pursuant to Administrative Rule 791.3310(2)(b) and plaintiff's request for information related to the misconduct was denied; (4) plaintiff requested information pursuant to Administrative Rule 791.3315(5)(d) regarding the investigation conducted on the grievance and could not present a defense without this information; (5) the hearing officer denied plaintiff due process by failing to presented evidence to support his findings in violation of Policy Directive 03.03.105 ¶ TT; (6) the hearing was conducted in violation of Policy Directive 03.03.105 ¶ B; (7) plaintiff was denied due process because the hearing officer, Lt. Randle, would not make a finding against the person who issued the misconduct, Randle's superior Captain Makara; and (8) plaintiff was prejudiced because he did not receive any of the information spoken of in the misconduct report in violation of due process, Administrative Rule 791.3310(1) and his due process rights under *Wolff v. McDonnell*, 418 U.S. 539 (1974). *See* Class II and Class III Misconduct Appeal (docket no. 1-1 at pp. 5-6). The appeal was denied based upon a finding that "No Due Process Violations Discovered W [sic] Hearing Process." *Id.* (docket no. 1-1 at p. 5).

### 5. Lack of proper exhaustion

Based on this record, plaintiff did not exhaust his retaliation claims alleged against defendants in Counts II, V and VI, because he failed to raise such claims at either the misconduct

---

[4] While plaintiff prefaced his first due process violation claim with the statement that he had a "1st Amendment right to file grievances," he did not claim that defendant Makara wrote the misconduct in retaliation for plaintiff filing grievances. Rather, plaintiff characterized the misconduct hearing as violating his due process rights because the hearing occurred while he was grieving a related issue.

hearing or the appeal. While plaintiff later filed a grievance challenging the misconduct report as retaliatory, the grievance is irrelevant for purposes of exhaustion. *See* Policy Directive 03.02.130 ¶ F.4; *Siggers*, 652 F.3d at 694. Based on this record, plaintiff did not properly exhaust his retaliation claims against defendants. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Accordingly, defendants are entitled to summary judgment as to the retaliation claims alleged in Counts II, V and VI.

### D. In the alternative, plaintiff's retaliation claims fail

Assuming, arguendo, that plaintiff had exhausted his retaliation claims, those claims would fail because he was found guilty of the offense listed in the misconduct ticket. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005), quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994). As in *Jackson*, the misconduct report shows that there was some evidence to support the charges. *See Jackson*, 158 Fed. Appx. at 662; docket no. 1-1 at pp. 3-4. Accordingly, in the alternative, defendants are entitled to summary judgment on the merits of the retaliation claims alleged in Counts II, V and VI.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants Heyns, Makara and Randle's motion for summary judgment (docket no. 14) be **GRANTED** and that plaintiff's claims alleged against them in Counts II, V and VI be **DISMISSED**.

Dated: January 28, 2014 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).