UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY A. JONES,

    Plaintiff,

v.                                          Case No. 1:12-cv-1341
                                                  Hon. Robert J. Jonker

DANIEL HEYNS, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' "Motion for summary judgment as to Count IV regarding the constitutionality of Policy Directive 03.02.130" (docket no. 41).

**I.**    **Plaintiff's complaint**

Plaintiff is incarcerated by the Michigan Department of Corrections (MDOC) and filed a prisoner civil rights complaint against four MDOC employees. The Court previously summarized plaintiff's complaint as follows:

> Plaintiff Anthony A. Jones presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). He sues MDOC Director Daniel Heyns and the following IBC employees: Captain P. Makara, Lieutenant R. Randle, and Corrections Officer (unknown) Shreve.
>
> On August 12, 2012, when Plaintiff was leaving the prison cafeteria with prisoner Walker, Defendant Shreve commented, "Jones, I always see you and Walker, walking together. I wonder know [sic] which one of you are the boy, and who's the girl." (Compl. ¶ 11, docket #1, Page ID#3.) Defendant Shreve was standing with another officer, and both officers began laughing. Plaintiff asked

Shreve not to refer to him as a boy, which, in the prison context, implies that he is homosexual. Shreve responded, "I'm just saying. It look like it to me." (*Id.* ¶ 14.)

Plaintiff contends that the comment violated MICH. DEP'T OF CORR., Policy Directive (PD) 03.02.140 (involving prohibited sexual conduct involving prisoners) and PD 03.03.130 (requiring humane treatment and living conditions for prisoners). Plaintiff filed a grievance complaining of the alleged policy violations. On August 30, 2012, Defendant Makara reviewed the grievance with Plaintiff and told him that Defendant Shreve had denied the comment and the other officer stated that he had not heard Shreve make the statement.

On September 5, 2012, Defendant Makara issued a Class II misconduct charge against Plaintiff for filing an unfounded grievance, ostensibly at the direction of the MDOC Director's Office and in accordance with PD 03.03.130 ¶¶ K, L (permitting issuance of a misconduct ticket, if approved by Warden in consultation with the Deputy Director or his designee). Defendant Randle conducted the misconduct hearing on September 11, 2012. Randle stated that his hands were tied because the Captain and Lansing had ordered issuance of the misconduct. Defendant Randle then found Plaintiff guilty of filing a misconduct ticket [sic] because Plaintiff's allegations were unfounded.

Plaintiff alleges that misconduct tickets are frequently issued against prisoners who file grievances. Plaintiff alleges that Defendants Makara and Randle retaliated against him by filing and upholding a misconduct ticket, in violation of the First Amendment and prison policy. He also alleges that Defendant Shreve's harassing statement violated the Eighth Amendment. In addition, he contends that PD 03.02.130 is void for vagueness, insofar as it fails to define the phrase "misusing the grievance process." (*Id.* ¶¶ 39-40.)

Opinion (docket no. 7 at pp. ID## 49-50).

The Court has dismissed all defendants except for MDOC Director Heyns and all of plaintiff's claims except for Count IV, in which he alleged that MDOC Policy Directive 03.02.103 ¶¶ K and L are unconstitutional. *See* Compl. at ¶¶ 38-43 (docket no. 1); Opinion (docket no. 7); Order for partial dismissal and partial service (docket no. 8); and Order adopting report and recommendation (docket no. 44).[1]

---

[1] Plaintiff filed an improper appeal of the order adopting report and recommendation (docket no. 44), which the Sixth Circuit dismissed. *See Jones v. Heyns*, No. 14-1615 (6th Cir. June 6, 2014) (docket no. 55).

The present motion for summary judgment was filed by defendants Heyns, Makara and Randle. *See* Motion (docket no. 41). However, shortly after defendants filed the motion, the Court dismissed Count IV as it pertains to defendants Makara and Randle. *See* Order (docket no. 44). Accordingly, the Court will consider defendants' present motion for summary judgment as being brought by the sole remaining defendant, MDOC Director Heyns, with respect to Count IV.

**II.      Legal standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

3

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Exhaustion of administrative remedies

Plaintiff's Count IV seeks to have a portion of MDOC Policy Directive 03.02.130 declared unconstitutional. However, "[p]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). Accordingly, before addressing the merits of the constitutional question raised in Count IV, the Court will address defendant Heyns' motion for summary judgment on the ground that plaintiff failed to properly exhaust this issue.

### A. Exhaustion requirement

4

The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### B.     MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue,

unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

Defendant Heyns contends that plaintiff's constitutional claim is unexhausted, incorporating by reference the argument advanced by defendants in the brief supporting the motion for summary judgment filed on April 4, 2013 (docket no. 15).  *See* Heyns' Brief (docket no. 42 at p. ID# 289); Fed. R. Civ. P. 10(c) ("[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion").  A seminal issue which Heyns' motion does not address is how a prisoner such as plaintiff exhausts a claim regarding the content of a policy directive.  MDOC Policy Directive 02.03.130 allows a prisoner to grieve the content of a policy directive as the directive was applied to that prisoner:

> F.    Two or more prisoners and/or parolees may not jointly file a single grievance regarding an issue of mutual impact or submit identical

> individual grievances regarding a given issue as an organized protest. Such grievances shall be rejected by the grievance coordinator. Grievances that raise the following non-grievable issues also shall be rejected:
>
> 1. *A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant*. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PO 04.01.105 "Prisoner Housing Case Unit Representatives / Warden's Forum".

Policy Directive 03.02.130 ¶ F 1 (emphasis added).

However, a different method of exhaustion applies when a prisoner challenges the existence of a policy (i.e., a facial challenge). As this Court observed in *Mario Sentelle Cavin, LLC v. Heyns*, No. 1:11-cv-1370, 2012 WL 5031503 (Report and Recommendation) (W.D. Mich. July 30, 2012), adopted in 2012 WL 5002292 (Order) (Oct. 17, 2012):

> [P]ursuant to MDOC policy regarding prisoner grievances prisoners are not permitted to file grievances concerning "the content of policy or procedure except as it was specifically applied to the grievant." *See* Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) ¶ F(1). As Plaintiff is challenging the existence of an alleged policy as opposed to its application to him (i.e., Plaintiff is asserting a facial rather than an as-applied challenge), this limitation appears to apply to Plaintiff's claim. Pursuant to this particular policy, if a prisoner "has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum." *Id.*

*Mario Sentelle Cavin, LLC*, 2012 WL 5031503 at *6. After finding that the plaintiff submitted an affidavit setting forth his efforts to address concerns with the Warden's forum, the court concluded that the plaintiff's efforts were sufficient to exhaust his facial challenge to the policy:

> Plaintiff can hardly be faulted for failing to submit a grievance regarding a claim that, pursuant to MDOC policy, is not subject to the prison grievance process. As noted above, the Supreme Court has held that "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust'"

7

>  a claim. Plaintiff has submitted evidence that he did precisely what MDOC policy required him to do and Defendant [MDOC Director] Heyns has submitted no evidence to the contrary.

*Id.*

Given these two different methods of exhaustion, the Court must determine whether plaintiff's complaint raised a facial challenge to the policy directive, an as-applied challenge to the policy directive, or both. The paragraphs at issue in this lawsuit provide as follows:

> K. A grievant shall not be penalized in any way for filing a grievance *except as provided in this policy for misusing the grievance process*. Staff shall avoid any action that gives the appearance of reprisal for using the grievance process.
>
> L. If a grievant intentionally files a grievance *which is investigated and determined to be unfounded* which, if proven true, may have caused an employee or a prisoner to be disciplined or an employee to receive corrective action, *the grievant may be issued a misconduct report if approved by the Warden* or FOA Area Manager; however, major misconduct for Interference with the Administration of Rules shall be issued only if approved by the Warden or FOA Area Manager after consultation with the appropriate Deputy Director or designee. The misconduct report shall be processed as set forth in PO 03.03.105 "Prisoner Discipline". If the grievant is found guilty of misconduct for filing an unfounded grievance, the grievant may be placed on modified access consistent with Paragraphs HH through LL.

MDOC Policy Directive 03.02.130 at ¶¶ K and L (emphasis added).

In his complaint, plaintiff alleged that these two paragraphs are overbroad and vague. Compl. at ¶¶ 15-18, 20-25. With respect to ¶ K, plaintiff alleged that the phrase "misusing the grievance process" is "void-for-vagueness" because it does not give adequate notice as to what is prohibited, and that this vague prohibition has a "sufficiently substantial impact on conduct protected by the First Amendment to render it unconstitutional." Compl. at ¶¶ 39-41. With respect to ¶ L, plaintiff alleged that it is so vague and overbroad that defendants "may impede upon Plaintiff's right

to grievance for redress . . . for fear there are some 'unfounded' act[s] Defendant[s] deem to be attributed to filing a good faith complaint against an Officer." *Id.* at ¶ 42. Plaintiff alleged that this language infringed upon his First and Fourteenth Amendment rights because it did not "limit the discretion on how Defendant[s] are to determine truth, [and] credibility in a contest[ed] complaint." *Id.* at ¶ 43.

Plaintiff seeks two types of relief. First, plaintiff seeks a declaratory judgment that ¶¶ K and L "are illegal and violate[] the constitutional rights of Plaintiff under 42 U.S.C. § 1983." *Id.* at p. ID# 9. The Court construes the requested declaratory relief as challenging the constitutionality of ¶¶ K and L as applied to plaintiff in this case. *See Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) ("an as-applied challenge . . . argues that a law is unconstitutional as enforced against the plaintiff[] before the court"). Second, plaintiff seeks injunctive relief against defendant Heyns with respect to ¶ K, asking the Court to "[p]ermanently enjoin Defendant from finding prisoners guilty of exercising their First Amendment Right with "unfounded" evidence, and to order defendant Heyns "to change PD 03.02.130(k) to protect Plaintiff and others['] First Amendment Right.*"* *Id.* at pp. ID## 9-10. The Court construes the requested injunctive relief as challenging the constitutionality of ¶ K on its face. *See Speet*, 726 F.3d at 871 ("[a] facial challenge to a law's constitutionality is an effort to invalidate the law in each of its applications, to take the law off the books completely") (internal quotation marks omitted).

    **C.**    **Exhaustion of plaintiff's as applied challenge to ¶¶ K and L**

    **1.**    **Grievance no. IBC-12-07-2144-17b ("2144")**

In their previous motion for summary judgment, defendants contended that plaintiff did not properly exhaust grievance no. 2144 prior to filing the present lawsuit. Defendants, however, did not present a copy of that grievance or explain how the grievance related to plaintiff's claims. In his response to this earlier motion for summary judgment, plaintiff stated that the operative grievance for his lawsuit was IBC-12-09-2871-27a ("2871"). *See* Plaintiff's Response (docket no. 21 at pp. 9-11); Grievance 2871 (docket no. 21-2 at pp. 6-11). Grievance 2871 was directed at defendant Makara for issuing the Class II misconduct (which resulted in plaintiff losing seven days of privileges) and mentioned defendant Randle as one of the "other parties involved" in the alleged misconduct. *Id.* Grievance 2871 was rejected at Step I because it raised a non-grievable issue related to the misconduct hearing process, noting that plaintiff's avenue of recourse was through the hearing appeal process. *Id.*

Plaintiff appealed to Step II, which denied the grievance with the following explanation:

> RUM Vroman reviewed this situation. Prisoner Jones received an Interference with the Administration of Rules (423) misconduct on 8-20-12 and was found guilty since Jones' allegations, contained in a grievance filed against CO S. Shreve, were investigated and determined to be unfounded. The grievance was without merit. This grievance #2871 appears to be a continuation of the unfounded allegations and the unsupported complaints based on the initial grievance against CO Shreve, and now submitted against the misconduct he was found guilty of. Based on Jones' apparent sequential misuse of the grievance process, by copy of this appeal response Grieve. Coord. M. Robinson is being requested by RUM Vroman to submit prisoner Jones' history of seemingly misusing the grievance system for possible placement of Jones on Modified Access status.
>
> Prisoner Jones' appeal provides neither evidence nor information that substantiates his allegations.
>
> This grievance is hereby denied.

*Id.* MDOC records reflect that plaintiff's Step III appeal for grievance no. 2871was rejected. *See* MDOC Prisoner Step III Grievance Report (docket no. 15-2 at p. 2).

### 2. Grievance No. IBC-12-08-2507-17C ("2507")

In his brief in support of the present motion for summary judgment, defendant Heyns included a copy of grievance no. 2507. *See* Grievance No. 2507 (docket no. 42-3). While this grievance was appealed through Step III, it refers to CO Shreve's comments made to plaintiff and does not address the constitutionality of Policy Directive 03.02.130 ¶¶ K and L. *Id.*

### 3. Lack of proper exhaustion

Viewing the evidence in the light most favorable to the non-moving party (plaintiff), there is no evidence that plaintiff properly exhausted his "as applied" challenge to Policy Directive 03.02.130 ¶¶ K and L. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Accordingly, defendant Heyns is entitled to summary judgment with respect to this claim.

### D. Exhaustion of plaintiff's facial challenge to ¶ K

In his response, plaintiff states that he complied with the requirement of Policy Directive 03.02.130 ¶ F 1 "by bringing this issue to his housing unit representative to be addressed at the Warden's Forum meeting." Plaintiff's Response (docket no. 49 at p. ID# 345). Plaintiff also states that he "brought concerns" to the Warden's Forum Chairman prisoner Randy Jones "who was transferred to another facility" and claims that he was unable to secure an affidavit from Jones due to the MDOC's policy prohibiting prisoner to prisoner correspondence. *Id.* However, plaintiff has presented no evidence to support the bald assertion that he addressed concerns with the Warden's Forum or that those concerns specifically addressed his facial challenge to the content of ¶ K. *See*

Policy Directive 03.02.130 ¶ F 1; *Mario Sentelle Cavin, LLC*, 2012 WL 5031503 at *6. Plaintiff has failed to properly exhaust his facial challenge to ¶ K. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Accordingly, defendant Heyns is entitled to summary judgment on this claim.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Heyns' motion for summary judgment (docket no. 41) be **GRANTED** and that this action be **DISMISSED**.

Dated: March 20, 2015                              /s/ Hugh W. Brenneman, Jr.
                                                   Hugh W. Brenneman, Jr.
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).